IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
NCMIC INSURANCE CO.,                          :
    Plaintiff,                                           :
        v.                                                    :        CIVIL ACTION NO. 13-6339
                                                                   :
CHRISTOPHER WALCOTT, D.C., et al.,:
    Defendants.                                       :
_____:

**MEMORANDUM OPINION**

**RUFE, J.**                                                                      September 3, 2014

        NCMIC Insurance Company issued a professional liability policy to Named Insured, Defendant Dr. Walcott, a chiropractor, for the period of March 19, 2011 to March 19, 2012. A female patient ("the Patient") sued Dr. Walcott and two related entities in state court alleging sexual assault, based on an incident that occurred on July 30, 2011 (the "Underlying Action").[1] When the Underlying Action was filed, Dr. Walcott provided a copy of the Underlying Complaint to NCMIC and requested defense and indemnification. NCMIC agreed to defend Dr. Walcott, subject to a reservation of rights, and then filed this suit, seeking a declaratory judgment that it was not obligated to defend or indemnify Dr. Walcott under the policy.[2] Presently before the Court is NCMIC's Motion for Judgment on the Pleadings.

**II. Standard of Review**

        A court may only grant a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), "if, on the basis of the pleadings, the movant is entitled to judgment as

---

[1] *See* Compl. Ex. A, the "Underlying Complaint" filed in *Bieber v. Christopher V. Walcott, D.C., et al.*, Court of Common Pleas of Philadelphia County, 2013-03422. Plaintiff in the Underlying Action is also named as a defendant in this declaratory judgment action.

[2] The declaratory judgment Complaint before the Court does not ask the Court to rule as to the policy's application to claims against any other parties to the Underlying Action, and the Court will not address Defendants' arguments to the extent that they would require the Court to do so.

a matter of law."[3] A judgment as a matter of law is appropriate only "when no material issue of fact exists. . . ."[4] When deciding a Rule 12(c) motion, a court is allowed to consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record" in making its decision.[5] For the purposes of this motion, the Court will consider the pleadings, the relevant insurance policy and its supplemental endorsements, and the complaint filed in the Underlying Action.

### III. Discussion

NCMIC argues both that it has no duty to defend Dr. Walcott in the underlying lawsuit and that it has no duty to indemnify him, pointing to several exclusions of coverage in the relevant policy.[6]

The cause of action asserted in an underlying complaint is neither dispositive nor determinative of whether a particular incident falls under a policy's coverage.[7] "Instead it is necessary to look at the factual allegations contained in the [underlying] complaint," and at the scope of the policy terms, to make a determination of coverage.[8]

When a dispute arises out of differing interpretations of an insurance policy, "interpretation . . . of coverage is generally performed by the court."[9] In evaluating an insurance contract, the courts must "ascertain the intent of the parties as manifested by the terms used in

---

[3] *DiCarlo v. St. Mary Hosp.,* 530 F.3d 255, 262 (3d Cir. 2008).

[4] *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A, v. Winget,* 510 F.3d 577, 582 (6th Cir. 2007)).

[5] *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (footnotes omitted).

[6] Compl. Ex. B, at 18-19.

[7] *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999) (internal citations omitted).

[8] *Id*. at 745-46.

[9] *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (quoting *Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)).

the written insurance policy."[10] When the policy's language is clear, courts are to "give effect to that language," but when language is ambiguous, courts are to construe ambiguity against the insurer insofar as the insurer is the party that drafted the agreement.[11]

To resolve this Motion, then, the Court must look at the facts asserted in the Underlying Complaint.[12] The Underlying Complaint alleges that Walcott is a chiropractor who conducts his business in Yardley, Pennsylvania. The Patient had received treatment by Dr. Walcott for pain in her left hip and groin from August 30, 2010 through December 31, 2010, during which time she was never asked to disrobe or offered massage therapy. She then discontinued treatment for a period of time. The Patient later resumed treatment for hip and groin pain, attending an appointment with Dr. Walcott for chiropractic treatment on Thursday, July 28, 2011. Dr. Walcott asked her to return for additional treatment on Saturday, July 30, 2011 at 10:00 a.m. When the Patient arrived for her appointment, no staff or other patients were present; the practice did not regularly maintain Saturday office hours. During the appointment, Dr. Walcott offered the Patient massage therapy. The Patient accepted and followed Dr. Walcott's instruction to disrobe down to her undergarments. Dr. Walcott used a vibrating device during the massage therapy. At some point during the massage therapy, Dr. Walcott caused the vibrating device to come into contact with the Patient's genitals without her consent. Dr. Walcott then inserted his fingers into the Patient's vagina, also without her consent. When the Patient expressed that she did not consent to that contact, Dr. Walcott informed her that "[t]hree other women wanted me to do that to them."[13]

---

[10] *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005).

[11] *Id.*

[12] Compl. Ex. A.

[13] Underlying Complaint ¶34.

The Patient's Underlying Complaint alleges that Dr. Walcott used Saturday appointments to meet, groom, and sexually abuse select patients, and exploited her trust and dependency. Based on this incident, the Patient sued Dr. Walcott, his corporation Walcott Chiropractic, P.C., and The Advanced Wellness Center of Pennsylvania, D.C. (a corporation materially related to Walcott Chiropractic, P.C.) alleging Negligence, Negligent Hiring/Supervision/Retention, Negligent Undertaking, Premises Liability, Negligence Per Se, and Battery. Among other allegations, she alleges that Dr. Walcott engaged in inappropriate sexual contact, engaged in unlicensed massage therapy, failed to treat her presenting medical problems, failed to maintain appropriate professional boundaries, and violated his professional code of ethics.

### A. Duty to Defend

In determining whether NCMIC has a duty to defend its insured, Dr. Walcott, the Court must consider the scope of the insurance coverage and the allegations in the Underlying Complaint.[14]

NCMIC's insurance policy with Dr. Walcott includes a Supplemental Legal Defense Endorsement, which provides that NCMIC will pay up to $25,000 in "defense costs incurred by the insured in certain covered proceedings."[15] The term "covered proceedings" includes "a civil action in state or federal court where the insured is alleged to have committed acts of sexual misconduct in the course of providing professional services to a patient . . . that is not otherwise subject to defense under the attached professional liability policy."[16] "Professional services" is not defined in the Endorsement, but is defined in the Professional Liability Insurance Policy as "services which are within the scope of practice of a chiropractor in the state or states in which

---

[14] *Allstate Ins. Co. v. Lombardi*, 142 Fed. App'x 549, 550 (3d Cir. 2005).

[15] Compl. Ex. B.

[16] *Id.*

4

the chiropractor is licensed. Professional services does not include any services furnished by an insured as a practitioner of any other healing or treating art."[17] The Endorsement also includes a list of exclusions, but explicitly does not exclude "a civil proceeding for alleged sexual misconduct which would not otherwise be subject to a defense under the terms of the attached professional liability policy."[18]

Insurers may contract to provide a defense even in situations in which they have no actual or potential obligation to indemnify. NCMIC has done so here. The Supplemental Legal Defense Endorsement ("Endorsement") plainly states that it the policy will cover up to $25,000 in defense costs in cases in which the insured is accused of committing acts of sexual misconduct in the course of providing professional services to a patient, which claims would not otherwise be subject to a defense under the terms of the professional liability policy.

As Dr. Walcott was massaging the Patient's hip and groin area immediately prior to his contact with her genitals, and massage therapy is not within the scope of a chiropractor's licensed practice,[19] NCMIC argues that Dr. Walcott was not providing "professional services" at the time of the misconduct and thus is not entitled to defense coverage under the Endorsement. On the record before it, the Court cannot hold that Dr. Walcott was not providing professional services at the time of the misconduct. The Patient alleges that she engaged Dr. Walcott for chiropractic treatment of a hip and groin injury. A fair reading of the Underlying Complaint is that the massage was offered in order to "groom" the Patient for the sexual battery that allegedly followed, and was not a separate professional service ("other healing or treating art"), but actually the beginning of the alleged sexual assault. Under NCMIC's reading, the agreement to

---

[17] *Id.*

[18] *Id.*

[19] For the purpose of this opinion, the Court will assume, without deciding, that massage is not within the scope of professional services offered by licensed chiropractors, as neither party argues otherwise.

defend Dr. Walcott for allegations of sexual misconduct would be rendered meaningless, because sexual misconduct is never a legitimate professional service. Accordingly, the Court will deny the Motion for Judgment on the Pleadings with regard to NCMIC's duty, under the Endorsement, to pay up to $25,000 for Dr. Walcott's defense costs in the Underlying Action.

### B. Duty to Indemnify

The insurer is required to indemnify "only if it is established that the claimant's damages are actually within the policy's coverage."[20] NCMIC argues that the policy does not give rise to a duty to indemnify Dr. Walcott in the underlying action, because the injuries suffered by the Patient due to Dr. Walcott's conduct are alleged to have been caused by sexual assault, and not by an accident arising out of any negligent omission, act, or error. NCMIC further argues that the policy explicitly precludes coverage for claims arising out of or attributable to: 1) an act or omission violating any federal, state, or local criminal statute or ordinance; 2) intentional infliction of injury; or 3) conduct involving "sexual impropriety, sexual intimacy, sexual assault, sexual harassment, or any other similarly defined act."[21] The insurance policy also plainly and unambiguously excludes coverage for "punitive or exemplary damages" imposed on the insured.[22]

The Court agrees that the Patient's claims against Dr. Walcott arise from an alleged intentional and knowing act, performed without consent (or any reasonable belief that the Patient would consent). The Patient is seeking to recover against Dr. Walcott for sexual assault and battery, however labelled in the Underlying Complaint. Furthermore, the alleged conduct at issue falls within the policy exclusion for conduct involving sexual impropriety, sexual intimacy,

---

[20] *Air Products & Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 707 F. Supp. 762, 766 (E.D. Pa. 1989) (internal emphasis omitted).

[21] Compl. Ex. B.

[22] Compl. Ex. B.

sexual assault, sexual harassment, or any other similarly defined act, as Dr. Walcott is alleged to have sexually penetrated the Patient deliberately and without her consent, and without offering a medical rationale. Accordingly, the Court holds that judgment must be entered in favor of NCMIC with regard to its duty to indemnify Dr. Walcott.

**IV.     Conclusion**

For the reasons set forth above, the Court will grant in part and deny in part NCMIC's Motion for Judgment on the Pleadings. An appropriate order follows.